UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY GEORGE GREGORY,

      Petitioner,

v.                                   Case No. 8:07-cv-1195-T-23TGW

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

    Gregory petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254

(Doc. 1) and challenges his conviction for first degree murder, for which Gregory serves

life.  Numerous exhibits ("Respondent's Exhibit __") support the response.  (Doc. 8)  The

respondent admits the petition's timeliness.  (Response at 6 Doc. 8)  The petition lacks

merit.

## **FACTS**[1]

    Gregory employed both his adult son and the adult victim in his lawn maintenance

business.  The three lived within a few houses of each other.  After completing evening

maintenance chores on the equipment, Gregory walked to the victim's home where he

found his wife and the victim kissing.  Gregory grabbed his wife and forced her home,

where Gregory retrieved a gun and a knife.  Gregory threatened his wife with the knife

---

[1] This summary of the facts derives from Gregory's brief on direct appeal.  (Respondent's
Exhibit 1)  Additional facts, as found by the state court in denying Gregory's motion for post-conviction
relief, are contained in ground two.

but left her unharmed.  Meanwhile, Gregory's son was unsuccessful in convincing the victim to leave.  The son left the victim and encountered Gregory walking toward the victim's home.  Gregory pulled a gun from his pocket and uttered, "They're both going to be gone tonight," and, "Now is a good time to do it."  While the son was checking on the status of his mother, a gunshot was heard and the police called.  Gregory returned to his home, showed his wife the gun in his pocket, and told her, "I shot him."  The son ran back to the victim's home, where he saw the victim motionless on the floor.  The police arrived and arrested Gregory, who told his son, "The business is yours."

Gregory's wife claimed that Gregory appeared to understand what he was doing even though he had been drinking whiskey that evening.  According to the son, approximately twenty-five minutes elapsed between Gregory discovering his wife with the victim and the shooting.  At trial, Gregory's defense was insanity.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.  Under
> § 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied--the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States," or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the
> Supreme Court of the United States."  Under the "contrary to" clause, a
> federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of law or if
> the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause, a federal habeas court may grant the writ if the state court identifies
> the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  <u>See</u> <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness <u>per se</u>, of the state court decision that we are to decide.").  Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412.

In <u>per</u> <u>curiam</u> decisions without a written opinion, the state appellate court affirmed both Gregory's conviction and sentence on direct appeal (Respondent's

Exhibit 3) and the denial of his subsequent Rule 3.850 motion to vacate.  (Respondent's

Exhibit 13)  The state appellate court's per curiam affirmances warrant deference under

Section 2254(d)(1) because "the summary nature of a state court's decision does not

lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.),

reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v.

Crosby, 538 U.S. 906 (2003).

Gregory bears the burden of overcoming by clear and convincing evidence a state

court factual determination.  "[A] determination of a factual issue made by a State court

shall be presumed to be correct.  The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

This presumption of correctness applies only to a finding of fact, not a mixed

determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert.

denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact

in the state court's rejection of Gregory's post-conviction claims.  (Order Denying Motion

for Post-Conviction Relief, Respondent's Exhibits 6 and 10)

**EXHAUSTION**

Ground four alleges that trial counsel was ineffective for failing to object to the

prosecutor's improper comments during closing arguments.  The respondent contends

that this claim is unexhausted because Gregory failed to present this same claim to the

state courts.  A petitioner must present each claim to a state court before raising the

claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly

presen[t]' federal claims to the state courts in order to give the State the 'opportunity to

pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v.

Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971).

Issue "G" in Gregory's motion for post-conviction relief (Respondent's Exhibit 5 at 141)

alleges both prosecutorial misconduct during closing argument and trial counsel's

ineffectiveness for failing to object.  The state court labeled issue "G" as claim "7," and,

in summarily rejecting this issue, the state court failed to recognize the ineffective

assistance of counsel component, focusing solely on the substantive claim of

prosecutorial misconduct.  (Respondent's Exhibit 6 at 227)

> In response to claims 7, 8, and 12, the Court finds such claims are
> inappropriately raised in a motion for postconviction relief brought pursuant
> to Rule 3.850, Fla. R. Crim. P.  Specifically, the claims are proper matters
> for direct appeal and, therefore, could and should have been raised in that
> format.  As stated in Teffeteller v. State, 734 So. 2d 1009 (Fla. 1999):
> "Proceedings under rule 3.850 are not to be used as a second appeal."  Id.
> at 1016 citing Torres-Arboleda v. Dugger, 636 So. 2d 1321 (Fla. 1994).
> See also Johnson v. State, 769 So. 2d 990 (Fla. 2000).  Therefore, based
> on the above, claims 7, 8, and 12 are DENIED.

The exhaustion doctrine requires Gregory to "fairly present" a claim to the state

courts.  Ground Four in the federal petition is substantially the same as issue "G" in the

motion for post-conviction relief, with each containing the same two components of

prosecutorial misconduct and ineffective assistance of counsel.  Consequently, Gregory

complied with the exhaustion doctrine's "fair presentation" requirement.  Gregory is not

responsible for the state court's failure to address both components.[2]  The respondent's

exhaustion argument is rejected.

---

[2]  The state court ruled that Gregory procedurally defaulted a substantive claim of prosecutorial misconduct by failing to assert that claim on direct appeal.  Because he offers no showing of cause and prejudice or manifest injustice to overcome the procedural default, Gregory is procedurally barred from pursing a substantive claim of prosecutorial misconduct.  Consequently, the review of ground four in the federal petition is necessarily limited to a claim of ineffective assistance of counsel for failing to object to the prosecutor's comments during closing arguments.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Gregory asserts seven grounds of ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time

of counsel's conduct."  466 U.S. at 690.  Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690.

Gregory must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  466 U.S. at 691-92.  To meet this burden, Gregory must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Gregory must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The state court summarily denied six grounds and denied the seventh ground after an evidentiary hearing.  Each ground was denied because either the record refuted that claim or Gregory failed to show that counsel performed deficiently.[3]

Ground One:

---

[3]  In Florida, Strickland governs ineffective assistance of counsel claims.  Walls v. State, 926 So.2d 1156 (Fla. 2006).  Although the post-conviction court's order omits citing Strickland as the standard for ineffective assistance of counsel, no explicit citation is required.  A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent.  Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775-86 (11th Cir. 2003).  The post-conviction court's analysis is consistent with Strickland.

Gregory alleges that trial counsel was ineffective for failing to suppress Gregory's statements to the police.  A detective testified (Respondent's Exhibit 17 at 429) that, during the arrest and before questioning, Gregory said "that nobody is going to mess around with his wife."  Gregory was immediately placed inside a crime scene van, where he was questioned.  A detective testified (Respondent's Exhibit 17 at 485-86) to Gregory's only custodial interrogation statement as follows:

> Q.    Could you tell the jury what the response of Mr. Gregory was when Detective Racznski told him that he wanted to hear his side of the story?
>
> A.    His response was, "Ain't no side of the story.  If I messed around with your wife I would expect you to do the same thing.  If you didn't, I would lose faith with you.  I am not angry.  I did what I did for principles.  I gave everything up for principles.  I have a house, race cars, a business and a grandbaby.  I gave them all up because of my principles.  I worked with him, I was trying to help him, and he does this.  The deed is done, it is not important.  It ain't going to make no difference.  The man was touching my wife.  End of case."

Gregory contends that he invoked his right to counsel prior to custodial interrogation by telling the detective "that he would tell everything to a lawyer and then the lawyer would tell everything to law enforcement."  The state post-conviction court summarily rejected this claim (Respondent's Exhibit 6 at 227-28) as follows:

> Responding to claim 1, the Court is presented with the need to determine whether Defendant's statement to law enforcement — that he would tell everything to a lawyer and then the lawyer would tell everything to law enforcement — was an equivocal or unequivocal request for an attorney prior to agreeing to speak to law enforcement.  The legal standard for such an evaluation has been expressed as follows:
>
> > The suspect must unambiguously request counsel.  As we have observed, "a statement either is such an assertion of the right to counsel or it is not."  Smith v. Illinois, 469 U.S. at 97-98 (brackets and internal quotation marks omitted).  Although a suspect need not "speak with the discrimination of

- 8 -

an Oxford don," post, at 476 (SOUTER, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.  If the statement fails to meet the requisite level of clarity, Edwards (Edwards v. Arizona, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981)), does not require that the officers stop questioning the suspect.  *See* Moran v. Burbine, 475 U.S. 412, 433, n. 4,89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986) ("The interrogation must cease until an attorney is present only if the individual states that he wants an attorney") (citations and internal quotation marks omitted).  We decline petitioner's invitation to extend Edwards and require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney.  Davis v. United States, 512 U.S. 452, 459 (U.S. 1994).  *See also* State v. Glatzmayer, 789 So. 2d 297, 302 (Fla. 2001).

Based upon this legal standard, the Court finds Defendant's statement — that he would speak to an attorney and then have the attorney tell law enforcement "everything" — was not an unequivocal request to have an attorney present and to assist him before he answered questions regarding the incident.  In addition, and contrary to Defendant's assertion that his son . . . overheard Defendant make such a statement to law enforcement, [the son] testified at trial and advised he did not recall having any conversations with his father after his arrest and specifically did not speak to his father about a lawyer.  Therefore, because there was no legal basis to raise a violation of Miranda claim, counsel could not have been ineffective for failing to raise a baseless claim.  As such, claim 1 is DENIED.

The state post-conviction court rejected Gregory's contention that he asserted his right to counsel by rejecting Gregory's credibility and accepting the credibility of Gregory's son, who refuted Gregory's claim that his son overhead him asserting his rights.  In sum, the state court found that Gregory never uttered the statement, not that the statement was insufficient to invoke his right to counsel.  The state court's credibility determination (that the son's testimony was credible over that of Gregory) and the factual determination (that Gregory never asserted his right to counsel before questioning) bind

this court.  Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsel's] testimony over [petitioner's]."), cert. denied, 526 U.S. 1047 (1999) and Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995).  See also 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Consequently, ground one lacks merit.

Ground Two

Gregory presents two claims of ineffective assistance of counsel, each involving an alleged failure to investigate.  Gregory complains that counsel failed to (1) investigate or fully develop defenses based on "heat of passion," "posttraumatic stress disorder," or lack of premeditation and (2) investigate the victim's character for violence.  Gregory labeled these as claims 2 and 3 in his state proceeding.  The state post-conviction court summarily rejected these claims (Respondent's Exhibit 6 at 228-31) (references to record omitted) as follows:

> In response to claim 2 — that trial counsel was ineffective for failing to "investigate, develop, and present viable defense" of "hypothesis of innocence" or "heat of passion" — the Court finds, as to the first part of the claim, that Defendant merely attempts to litigate the issue of insanity. Defendant states in his Motion, "Defendant alleges his hypothesis of innocence was established by the defense of insanity due to posttraumatic stress disorder.  However, the jury as most jury's (sic) in Florida, declined to acquit based on an insanity defense.  Nor, as most lay-people, failed to comprehend the full implications of the mental defects due to posttraumatic

stress disorders."  Such an argument is an attempt to relitigate an issue
raised during trial and, by implication of the verdict, unaccepted by the jury.
As such, the argument is inappropriately raised in a motion filed pursuant to
Rule 3.850, Fla. R. Crim. P.  *See* Teffeteller v. State, 734 So. 2d 1009 (Fla.
1999):  "Proceedings under rule 3.850 are not to be used as a second
appeal; nor is it appropriate to use a different argument to relitigate the
same issue."  *Id.* at 1016 *citing* Torres-Arboleda v. Dugger, 636 So. 2d 1321
(Fla. 1994).  *See also* Johnson v. State, 769 So. 2d 990 (Fla. 2000).

Responding to Defendant's second portion of claim 2, the issue of defense
counsel's alleged failure to raise a heat-of-passion defense, the Court finds
that no competent evidence would have supported such a defense and,
therefore, defense counsel can not be ineffective for failing to raise an
unsupportable defense.  *See* State v. Eby, 342 So. 2d 1087, 1089 (Fla. 2d
DCA 1977) ("[A] decision not to raise certain possible defenses or call
certain defense witnesses is ordinarily a matter of personal judgment and
strategy within the prerogatives of defense counsel.  As such, it is not a
proper predicate for a collateral attack on the competence of counsel
unless it is so irresponsibly exercised as to constitute 'inadequate'
representation.").  Specifically, a heat-of-passion defense is appropriate
when it is "the result of a spontaneous, blind and unreasoning reaction by
the defendant."  Wilson v. State, 493 So.2d 1019, 1022 (Fla. 1986).

According to Defendant's own testimony, he first caught his wife kissing the
victim.  He then took his wife back to their residence and spoke with her for
several minutes about the situation.  Defendant then exited his house and
retrieved a pistol from his vehicle.  Defendant then began walking back to
his residence but observed the victim inside his home and went and spoke
to him — while Defendant was in possession of the pistol.  Defendant had
a short conversation with the victim but returned to his house without
physical incident.  While at his house Defendant poured himself a drink,
consumed it, poured another, and then used the restroom.  Upon exiting
the restroom Defendant retrieved a large knife and placed it to his wife's
face.  However, Defendant secured the knife without further incident and
then sat down in his living room and "tried to calm [himself] down."
Defendant then switched batteries in two cell phones he had in his
possession and then plugged the cell phones into the wall outlet so that
they could charge overnight.  Defendant then finished his second drink and
again confronted his wife about the kissing incident.  It was during this
conversation that his wife allegedly responded "it felt good" when
confronted with the question of whether or not she was having an affair
with the victim. According to Defendant, the next thing he remembered was
a "poof" and then he found "a gun laying in his hand."  Accordingly,
Defendant's actions were clearly not the result of a "spontaneous, blind and
unreasoning reaction."  *See* Floyd v. State, 850 So. 2d 383, 397 (Fla. 2002)

("Defendant's deliberate selection and transportation of a gun to the victim's home is clearly inconsistent with his theory that he argued with the victim and simply shot her in a moment of uncontrolled rage without having fully formed a conscious purpose to kill.").  Therefore, defense counsel cannot be ineffective for failing to argue or proffer a defense wholly unsupportable by the evidence.  Based on the above, claim 2 is DENIED.

In response to claim 3 — that trial counsel was ineffective for failing to "investigate and produce exculpatory evidence of [the] victim's character and reputation for violence" — the Court finds the claim legally untenable. In order to introduce the character evidence suggested by Defendant, he would first have needed to argue self-defense.  Dupree v. State, 615 So. 2d 713, 720 (Fla. 1st DCA 1993) ("Indeed, we have found no Florida case in which aggressive character evidence was allowed without evidence as well of self-defense or doubt regarding who was the first aggressor."). However, in order to argue self-defense Defendant would have needed factual support for such an argument or defense.  As outlined in response to claim 2, above, the facts as explained by Defendant himself would not support such a claim.  Specifically, Defendant never mentioned or even alluded to the fact that the victim made any aggressive moves toward him at the time of the shooting — and still makes no such allegation in the present Motion.  See Berrios v. State, 781 So. 2d 455, 457-58 (Fla. 4th DCA 2001) ("Before a defendant may offer either type of character evidence (dangerous character or reputation), however, he or she must lay a proper predicate demonstrating some overt act by the victim at or about the time of the incident which reasonably indicated to the defendant a need for action in self defense.").

Coupled with this fact is the undisputed fact that Defendant went to the victim's residence armed with a firearm.  In addition, and even if there was evidence of some overt act by the victim, because the confrontation took place at the victim's residence, Defendant would have then needed to retreat as far as reasonable under the circumstances before resorting to deadly force.  There was simply no proffered testimony or evidence of such a retreat or Defendant's meeting the threat of deadly force with his own use of deadly force — and again no such allegation of same in the present Motion.  Therefore, any attempt by defense counsel to proffer such a claim or defense would have been wholly unsupported by the evidence and, therefore, rejected by the trial court.  See Berrios v. State, 781 So. 2d at 458, citing Weiand v. State, 732 So. 2d at 1049 (Fla. 1999) ("One has a duty to retreat 'to the wall' unless in one's home or it would increase the danger.  Accordingly, under these facts, appellant was not entitled to a self-defense instruction; the trial court erred in allowing appellant to proceed on that theory, and in so instructing the jury. ").  As such, defense counsel cannot be ineffective for failing to argue or proffer a defense wholly

unsupportable by the evidence and, therefore, legally untenable. Based on the above, claim 3 is DENIED.

Choosing a specific line of defense to the exclusion of others is a matter of strategy.  Stanley v. Zant, 697 F.2d 955, 964 (11th Cir. 1983).  Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690-91. Gregory cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness to call or defense to present.  See e.g., Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney

- 13 -

would have chosen it.'"), quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983).

Gregory's claims were rejected because the challenged defenses were not supported by the evidence.  The state court's decision was not an unreasonable application of controlling Supreme Court authority.  See e.g. Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Ground Three:

Gregory alleges that trial counsel rendered ineffective assistance by not moving for a mistrial because the victim's family continually interrupted Gregory's testimony.  The state post-conviction court summarily rejected this claim (Respondent's Exhibit 6 at 231) (references to record omitted) as follows:

> Responding to claim 4 —  that trial counsel was ineffective for failing to "move for mistrial when [the] victim's family caused continuing disruption in [the] courtroom" — Defendant has failed to cite anywhere in the record where such outburst took place and the Court, in reviewing the portion of the record wherein Defendant alleges the outburst took place, fails to find any such circumstances.  According to Defendant, all of the alleged outbursts took place during his testimony, both during direct examination and cross examination.  However, in reviewing the transcripts, there is no point during Defendant's testimony that suggests such outbursts took place or, as stated by Defendant, "Defendant, several times asked his lawyer, if something couldn't be done to stop the abuse and disruptions in that, he could not focus and concentrate on the on-going proceedings."  Therefore, because the record conclusively refutes Defendant's contention, claim 4 is DENIED.

A review of the record confirms the post-conviction court's finding that no disruptions were recorded during Gregory's testimony.[4]  Moreover, the record shows that

---

[4]  Although this issue was not a subject of the evidentiary hearing, Gregory's counsel in the post-conviction proceeding asked defense counsel if the victim's family caused a disturbance.  Defense counsel rejected that concept as follows (Respondent's Exhibit 9 at 366):

(continued...)

the judge for the  post-conviction proceedings was also the trial judge.  Gregory fails to

show that the state judge's findings are unreasonable.  Consequently, ground three lacks

merit.

Ground Four:

Gregory alleges that trial counsel was ineffective for failing to object to the

prosecutor's improper comments during closing arguments.  Gregory contends that the

prosecutor's comments (1) violated the "Golden Rule" by arguing that the jurors could be

future victims unless they return a guilty verdict and (2) improperly disparaged certain

defense witnesses.  The state court failed to address this claim even though the motion

for post-conviction relief clearly asserted a claim of ineffective assistance of counsel.[5]

In Florida, "wide latitude is permitted in arguing to a jury."  Breedlove v. State, 413

So.2d 1, 8 (Fla. 1982).  An improper prosecutorial remark compels habeas corpus relief

only if the remark is so egregious that the proceedings are rendered fundamentally

unfair.  See Cargill v. Turpin, 120 F3d 1366 (11th Cir. 1997).   A reviewing court must

evaluate an allegedly improper comment in the context of both the prosecutor's entire

closing argument and the trial as a whole.  Branch v. Estelle, 631 F.2d 1229, 1233 (5th

---

[4](...continued)

Q.      [D]o you recall any — during the trial itself do you recall any rumblings from the audience or anything or ay of their family members?

A.      I don't personally remember anything like that.

[5]  See discussion earlier regarding procedural default.

Cir. 1980).[6]  The specific comment that Gregory finds objectionable, in its proper context,

is the following (Respondent's Exhibit 17 vol. V at 817-18):

> If you were to believe that the State doesn't prove premeditated murder,
> then you go to second-degree murder and read those elements of that
> crime and see if you believe that that crime fits.  If you don't believe the
> State's proved that, you go to manslaughter.  You see if the State's proved
> that. There is no not guilty option here because Mr. Gregory has chosen to
> plead not guilty by reason of insanity.
>
> Another important thing about this instruction is this:  If your verdict is that
> the defendant is not guilty because insane, that does not necessarily mean
> that he'll be released from custody, but it could be.  If you find him not guilty
> by reason of insanity, the judge has to conduct further proceedings to see if
> he is put in a hospital or if he's to be put on the street.  Only if you find him
> guilty of a crime does he go to jail for it.

The comment is a correct statement of the law.  Gregory's argument that the

prosecutor's comments "suggest that the juror's may be future victims of the accused"

unless they convict him (Petition at 22-23) is simply unsubstantiated embellishment.

Similarly, the prosecutor's negative comments about the defense's expert witnesses and

positive comments about the state's expert witnesses is typical of closing arguments.

Moreover, a fair review of all the incriminating evidence eviscerates any argument

that the comments had any impact on the jury's decision.  "If a reviewing court is

confident that, absent the improper remarks, the jury's decision would have been no

different, the proceeding cannot be said to have been fundamentally unfair."  Tucker v.

Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), cert. denied, 480 U.S. 911

(1987).  Consequently, ground four lacks merit.

_____

[6]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before
October 1, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en
banc).

Ground Five:

Gregory alleges that trial counsel rendered ineffective assistance by failing to object to the perjured testimony of the state's key witness, Gregory's wife. The state post-conviction court summarily rejected this claim (Respondent's Exhibit 6 at 231) (references to record omitted) as follows:

> In response to claim 6 — that trial counsel was ineffective for failing to "present evidence of perjury by State's key witness" — Defendant advises that his wife's testimony that "she did not have another affair after defendant's arrest, is inconsistent with her deposition." Defendant argues this alleged inconsistency of his wife's having an affair is both relevant to the issues at trial and admissible. However, in order for such a factor to be relevant to the issues at trial, it would have to be accepted as justifying Defendant's actions. Such is obviously legally incorrect. But, more importantly, no inconsistency between the deposition testimony and trial testimony of Defendant's wife existed by which defense counsel could have impeached. Based on the foregoing, defense counsel cannot be ineffective for failing to impeach a witness with nonexistent inconsistencies. Therefore, claim 6 is DENIED.

The state post-conviction court rejected this claim ruling that inconsistencies did not exist and counsel's performance was not deficient because the impeachment testimony at issue was inadmissible under the state's rules of evidence. The admissibility of evidence in a state trial is largely a matter for the state to decide without federal intervention. See McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."), cert. denied, 507 U.S. 975 (1993), and Marshall v. Lonberger, 459 U.S. 422, 438, n. 6, (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."). Ground Five lacks merit.

Ground Six:

Gregory alleges that trial counsel rendered ineffective assistance by failing to object when the trial court erred by not honoring the jury's request to "read back" testimony.  After the state responded, the state post-conviction court summarily rejected this claim (Respondent's Exhibit 8 at 312-13) as follows:

> [T]he State also argues that claim 9 should be denied because the records and files directly refute the contention.  Specifically, in claim 9 Defendant avers his counsel was ineffective for either failing to object or for acquiescing to the trial court's error in not reading back a portion of the trial proceedings, via court reporter transcripts, requested by the jury.  The State argues that when the trial court instructed the jury that transcripts of the proceeding did not exists [sic], but that if they desired selected portions, the court reporter could locate such and read them back to the jury if they desired, the trial court's actions were proper and appropriate.  Therefore, because the actions of the trial court were proper, there was no basis upon which defense counsel could have objected.  After reviewing the State's Response, the arguments contained therein, and the transcripts attached thereto, the Court agrees.  Based on the foregoing, Claim 9 is DENIED.

The jury's request was for "transcripts of the testimony of" Gregory, his son, and his son's wife.  Both counsel and the trial judge estimated that the request involved "at least two hours" of testimony.  Both of the trial attorneys and the trial judge agreed on an appropriate response, which the judge provided (Respondent's Exhibit 17 vol. V at 850):

> Your question is, "Can we get transcripts of the testimony of Matt, Tammy and Timothy, please."  I've been in this business for slightly more than 30 years.  I don't know what language she uses to take that down, but it's not English.  There is no transcript, I mean, she will go home, plug in whatever she has to, some sort of software, and it produces a rough draft of a transcript, and then she fine tunes it, and then we get a transcript.  But there are no automatic transcripts.  So I can't answer this question.
>
> Now, if there are specific areas, specific question and answer that you are having problems with, then she can probably search her notes and come up with the particular question and the particular answer.  But we can't read transcripts because we don't have transcripts.  Okay?  Thank you.

Gregory fails to show the impropriety of the trial judge's response to the jury's request.  The trial judge offered to permit a "read back" if the jury could identify a specific area of testimony.  The jury submitted no additional request.  The post-conviction court correctly ruled that defense counsel's performance was not deficient.  Consequently, ground six lacks merit.

Ground Seven:

Gregory alleges that trial counsel rendered ineffective assistance because of an actual conflict of interest, specifically that counsel simultaneously represented both Gregory and the victim's family.  The state post-conviction court conducted an evidentiary hearing and rejected this claim (Respondent's Exhibit 10 at 373) as follows:

> The second ground alleges that trial counsel, at the time he was representing the defendant, was also representing the family of the man the defendant murdered.  He bases this claim on the fact that trial counsel came to the jail before the trial and asked the defendant if he wished to sign certain papers dealing with worker's compensation.  In fact, the victim had been the defendant's employee at the time of his death.  Trial counsel testified that, as best he could recall, another person, probably a lawyer, was representing the victim's family and asked him if he would take the papers to the defendant to sign acknowledging that the deceased was his employee.  Trial counsel took the papers to the defendant, explained them to him, and asked if he wished to sign.  At no time did trial counsel represent the victim's family.
>
> The defendant has failed to prove either of the two grounds[7] upon which the hearing was held.

Defense counsel testified at the evidentiary hearing that Gregory's signature on the document was simply an acknowledgment that the victim was Gregory's employee.  And when Gregory asked the significance of the document, counsel advised that the

---

[7]  The second ground in the state evidentiary hearing is not asserted in the federal petition.

family members "just want to see if they can get . . . the death benefits from workman's comp."  (Respondent's Exhibit 9 at 364)  Counsel testified that whether Gregory signed had no impact on the criminal case and that he "didn't care one way or the other" whether Gregory signed or the victim's family received a benefit.  (Respondent's Exhibit 9 at 366)  Gregory fails to establish that his counsel actively worked against his best interest.

The post-conviction court's rejection of this claim is consistent with federal law. "[T]he possibility of conflict is insufficient to impugn a criminal conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."  Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).  To prove an actual conflict, "[t]he defendant must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence that favors an interest in competition with that of the defendant." Buenoano v.  Singletary, 74 F.3d 1078, 1086 n.6 (11th Cir. 1996) (citations omitted).  "To prove adverse effect, a habeas corpus petitioner must show:  (1) the existence of a plausible alternative defense strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense."  Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001), cert. denied, 535 U.S. 970 (2002).

Gregory fails to show that the state court's determination was unreasonable. Consequently, ground seven lacks merit.

Accordingly, Gregory's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against Gregory and close this case.

ORDERED in Tampa, Florida, on August 6, 2010.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE